IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| SILVER BUCKMAN | : | NO. 14-540 |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                  **AUGUST 4, 2017**

Presently before the Court is Defendant Silver Buckman's Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33.  (ECF No. 251.)  For the following reasons, Defendant's Motion will be denied.

**I.      BACKGROUND**

On October 29, 2015, a jury found Defendant Silver Buckman guilty of conspiracy to commit bank fraud and wire fraud, six substantive counts of bank fraud, and five substantive counts of wire fraud.  The charges and evidence centered on Buckman's orchestration of a scheme to defraud homeowners and lending institutions in lease-buyback transactions, pursuant to which she obtained $3,787,600 in mortgages from federally insured and non-federally insured financial institutions.  The trial lasted nearly four weeks.  During that time, the jury saw over 300 exhibits and heard from over fifty witnesses.  Defendant now seeks a new trial based entirely on the assertion that her trial counsel—Joshua Briskin, Esquire—was ineffective, and that she was constructively denied representation during trial.

**A.     Procedural History**

On September 30, 2014, a grand jury returned a 12-Count Indictment charging Defendants Silver Buckman, Vincent Foxworth, Cynthia Foxworth, Danette Thomas, Byron

White, and Franklin Busi with crimes related to a conspiracy to commit bank and wire fraud. (Indictment, ECF No. 1.)[1] Specifically, Defendants were charged with: (1) conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349; bank fraud, in violation of 18 U.S.C. § 1344; and wire fraud, in violation of 18 U.S.C. § 1343. (*Id.*)[2] The Government alleged that Defendants engaged in a scheme to defraud by making false representations to vulnerable homeowners facing foreclosure. The false representations related to Defendants' purported mortgage rescue program, under which Defendants offered homeowners the opportunity to repair their credit, or to obtain money in the form of equity, by selling their homes pursuant to a sale-leaseback arrangement. The Government also alleged that Defendants made false representations and omissions of material fact to lending institutions in furtherance of the fraudulent scheme.

On February 17, 2015, Buckman's trial counsel filed a motion to withdraw. (ECF No. 67.) The Court held a hearing on the motion on February 25, 2015. Buckman and her trial counsel subsequently resolved their disagreement, and notified the Court of the same. On March 30, 2015, the Court dismissed the motion to withdraw as moot. (ECF No. 74.)

Trial commenced on October 5, 2015. After nearly four weeks of evidence and testimony, the jury entered a verdict on October 29, 2015. The jury found Silver Buckman guilty on all counts. The jury found Vincent Foxworth guilty on Counts 1, 3, 4, 6 through 9, 11, and 12. The jury found Vincent Foxworth not guilty on Count 2. The Jury found Cynthia Foxworth guilty on Counts 1, 4, 9, and found her not guilty on Counts 2, 3, and 8. Defendants Danette

---

[1] In May 2015, Defendant Franklin Busi entered a negotiated guilty plea. On October 21, 2015, Busi testified as a Government witness.

[2] Count 1 charges all Defendants with conspiracy to commit bank and wire fraud. Counts 2 through 7 charge various Defendants with bank fraud, and Counts 8 through 12 charge various Defendants with wire fraud. Silver Buckman was charged on all counts.

Thomas and Byron White were found not guilty of all charges brought against them. (*See* Min. Entry, ECF No. 180.)

On November 12, 2015, Buckman's trial counsel filed another motion to withdraw. (ECF No. 198.) A hearing on the Motion was held on November 17, 2015. The Court granted the motion, and appointed new counsel—Dana Bazelon, Esquire—to represent Buckman during the post-trial proceedings. (ECF No. 203.)

On May 6, 2016, Buckman filed the instant Motion for a New Trial. (Def.'s Mot., ECF No. 251.) On June 24, 2016, the Government filed a Response. (Gov't's Resp., ECF No. 255.) On July 28, 2016, Buckman filed a Reply. (Def.'s Reply, ECF No. 257.)

### B. Factual Background

As noted above, during the nearly four-week trial, the jury saw over 300 exhibits and heard from over fifty witnesses. The evidence established that through Silver Buckman's company, Fresh Start Financial, numerous financially distressed homeowners were enticed to enter into lease-buyback agreements with "investors," because they were assured they would not lose title to their homes, and that their credit could be repaired. The homeowners were told they would share title to their home with the investors for a period of one year, during which time the new mortgage would be paid from escrow accounts set up during settlement. Silver Buckman's parents, Vincent Foxworth and Cynthia Foxworth, were the "investors" in the conspiracy, and were paid fees for essentially serving as straw borrowers for the lease-buyback transactions. The homeowners were led to believe that they could remain in their homes through the year covered by the lease buyback agreement, and at the end of the year, they could repurchase their home by refinancing the mortgage using the remainder of the money from escrow accounts that would be created.

The evidence showed that Buckman recruited homeowners using advertising pamphlets, and hired employees that would pitch the details to potential clients over the telephone. The homeowners were told that their equity would be placed in escrow to assist with the bridge loan; they were rarely told that investors fees of $10,000 and settlement services fees of $5,000 would be deducted from the equity. (Oct. 26 Trial Tr. 42, 61-63, 65, 68-69, 78, 81-82; Gov't's Ex. 291.) Bank records for Fresh Start Financial and for the Foxworths confirmed that these fees were taken from the homeowners during the settlements.

The documents that were associated with the lease-buyback arrangements—including the lease buyback contracts, the Uniform Residential Loan Applications, and the HUD-1 settlement statements—contained numerous false representations. None of the documents presented to the lending institutions contained any reference to the lease-buyback contracts. The lending institutions that authorized the mortgages—and at times, second mortgages—were not told and did not know that the transaction involved a lease-buyback. (Oct. 13 Trial Tr. 68, ECF No. 236.) Had the banks known that the transactions were lease-buybacks, or that the Foxworths were simply serving as straw borrowers, they would never have approved the mortgages. (Oct. 13 Trial Tr. 69.)

The Government presented the testimony of the homeowners, who confirmed the role of Silver Buckman in promoting the mortgage rescue program, and in falsely representing the details of the arrangement. None of the homeowners were able to reacquire their homes after the expiration of the one-year lease-buyback arrangement. The evidence showed that Buckman never escrowed the funds from the equity received at settlement, and that she depleted all of the commingled funds that were placed in her bank accounts.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 33 permits the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "A new trial should be ordered only when substantial prejudice has occurred," and the "interest of justice so requires." *United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015) (quoting *United States v. Armocida*, 515 F.2d 29, 49 (3d Cir. 1975)), cert. denied, 136 S. Ct. 401 (2015).

Defendant bears the burden of demonstrating that the interest of justice requires the grant of a new trial. *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 719 (E.D. Pa. 2009). Rule 33 Motions should be granted "sparingly and only in exceptional cases." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008). Exceptional cases include those in which trial errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (citation omitted). The decision to grant or deny a new trial is within the sound discretion of the district court. *United States v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007).

## III. DISCUSSION

Buckman seeks a new trial on the basis that her trial counsel was ineffective. She argues that: (1) she was denied legal representation during a critical stage of the proceeding; and (2) that she was constructively denied representation during the trial.[3] Her constructive denial of counsel argument is based on allegations that her counsel failed to prepare for trial, slept through

---

[3] Arguments based on ineffective assistance of counsel are generally entertained in habeas corpus proceedings, not at the post-trial motion stage. *United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). However, a district court may consider ineffective assistance claims at the post-trial motion phase where the record is sufficient to make the determination. *United States v. Headley*, 923 F.2d 1079, 1083-84 (3d Cir. 1991). The record appears to be complete, as Buckman's arguments are based on her counsel's conduct during the course of the trial. We see no reason to postpone consideration of Defendant's ineffective assistance of counsel arguments.

portions of the trial testimony, and failed to object to prejudicial argument from the Government and prejudicial testimony from witnesses. Relying on *United States v. Cronic*, 466 U.S. 648, 659 (1984), Buckman contends that with respect to these arguments, prejudice may be presumed.

Generally, claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which sets forth a two-prong test to establish ineffectiveness. First, counsel's performance must be deficient. *Id.* Second, counsel's deficient performance must have prejudiced the defense. *Id*. However, the standard is different when a defendant alleges constructive denial of legal representation under *Cronic*. In "cases of actual or constructive denial of assistance of counsel altogether," a defendant does not have to show prejudice. Instead, "prejudice may be presumed . . . ." *Palmer v. Hendricks*, 592 F.3d 386, 398 (3d Cir. 2010) (citation and internal quotation marks omitted).

Buckman also argues that if the Court determines that *Cronic* does not apply and prejudice is not presumed, she is nevertheless entitled to a new trial because she suffered prejudice by her trial counsel's ineffective representation under *Strickland*.

A. **Buckman Was Not Constructively Denied Representation Under *Cronic***

In *Cronic*, the Supreme Court held that prejudice may be presumed and a Sixth Amendment violation has occurred when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. One situation where prejudice is presumed and reversal of conviction is automatic is when "the accused is denied counsel at a critical stage of [her] trial." *Id*. at 659. Prejudice is also presumed when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*. Buckman makes arguments under both scenarios of presumed prejudice.

6

Buckman first contends that she was unrepresented during a "critical stage" of the trial. Buckman refers to two meetings that took place between counsel for her co-Defendants and Government counsel during the course of the trial. Buckman's trial counsel did not attend the meetings. At the meetings, counsel discussed objections to the Government's use of co-Defendants' prior testimony as evidence at trial. Each co-Defendant had testified during civil trials brought by homeowners that related to the lease-buyback mortgage conspiracy. As part of its case, the Government intended to read into the record portions of that civil testimony. Counsel for co-Defendants raised objections to the testimony, contending that the statements of their co-Defendants could run afoul of the Confrontation Clause, pursuant to *Bruton v. United States*, 391 U.S. 123 (1968).

In *Bruton*, the Supreme Court held that in certain circumstances, admission of a non-testifying co-defendant's confession that inculpates the defendant violates the Sixth Amendment's Confrontation Clause because the defendant has no opportunity for cross examination. *Id.* at 126. The Third Circuit has interpreted *Bruton* broadly to apply not only to confessions, but also to statements of co-defendants that are directly accusatory. *See, e.g.*, *United States v. Ruff*, 717 F.2d 855, 857-58 (3d Cir. 1983). Defendant contends that because her trial counsel did not attend the meetings, he was unable to negotiate with the Government with regard to striking portions of the testimony that might implicate *Bruton*. As a result, she contends that the excerpts of her co-Defendants' testimony that were read into evidence unlawfully cast blame on her in violation of *Bruton*. Defendant points to four specific examples of testimony that she contends caused prejudice: (1) Vincent Foxworth's testimony that Buckman "handled" the mortgage application for a property that the Government contended contained fraudulent information; (2) Cynthia Foxworth's testimony that she did not fill out the

7

loan applications herself, but that her daughter did so; (3) Byron White's testimony that Buckman communicated with and recruited a homeowner, and that he "trusted" Buckman; and (4) Danette Thomas's testimony that she believed Buckman knew her business, and believed that Buckman conducted herself in a professional manner.

The Supreme Court has clarified that the phrase "critical stage" means "a step of a criminal proceeding, such as arraignment, that h[olds] significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 696 (2002). The Third Circuit has repeatedly emphasized the narrow construction of *Cronic*, which is meant to "prescribe[] a presumption of prejudice only with regard to those critical stages of litigation where a denial of counsel would necessarily undermine the reliability of the entire criminal proceeding." *Ditch v. Grace*, 479 F.3d 249, 255 (3d Cir. 2007); *see also Harris v. Diguglielmo*, 304 F. App'x 80, 82 (3d Cir. 2008) (holding that denial of counsel during the preliminary hearing did not warrant presumed prejudice under *Cronic*).

The meetings between counsel for the Government and counsel for co-Defendants did not constitute a critical stage of the proceedings. It was not a "step of the criminal proceeding such as an arraignment." *Bell*, 535 U.S. at 696. It was merely an opportunity for counsel to discuss evidentiary objections and to move the trial forward expeditiously without the Court's involvement. The absence of Buckman's trial counsel at the meetings with the Government to resolve objections to transcripts did not in any way undermine the reliability of the criminal proceeding. There were ample opportunities for Buckman's trial counsel to raise objections to the testimony of her co-Defendants to the extent that he believed they posed issues under *Bruton*. Accordingly, Buckman was not denied representation during a critical stage of the proceeding.

Buckman also contends that other actions of her counsel amounted to the constructive denial of legal representation during the trial, and that as a result, prejudice may be presumed. "A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997) (citations omitted); *see also Cronic*, 466 U.S. at 659 ("[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."). "Courts have found constructive denial of the right to counsel under *Cronic* where counsel offered no assistance to defendant at plea proceedings, acted as a mere spectator at defendant's sentencing, failed to object to a directed verdict against the defendant, and deliberately stressed the brutality of his client's crime." *Appel v. Horn*, 250 F.3d 203, 212-213 (3d Cir. 2001) (citations omitted).

Buckman first argues that she was denied constructive representation as a result of counsel's failure to prepare for trial. She contends that her counsel admitted on the record that he did not review the discovery. However, the trial testimony reflects only that trial counsel informed the Court that he did not receive specific discovery on the first witness who testified— John Livia. This was just one of the fifty witnesses that testified at trial, and related to just one of the numerous property transactions in which Buckman was involved. In addition, Buckman argues that her trial counsel slept through portions of the trial. She submits a declaration in which she supports this contention. Buckman also represents that counsel for Vincent Foxworth stated that he once saw Defendant's counsel with his eyes closed. This Court did not observe trial counsel sleeping during the trial. Moreover, no one advised the Court during the trial that

9

counsel was sleeping. In any event, courts that have addressed this issue have determined that prejudice may only be presumed "when counsel sleeps either through a substantial portion of a defendant's trial or at a critical time during trial." *United States v. Ragin*, 820 F.3d 609, 619 (4th Cir. 2016) (citation and internal quotation marks omitted); *see also Muniz v. Smith*, 647 F.3d 619, 623 (6th Cir. 2011) (denying claim under *Cronic* because petitioner could not show that trial counsel was asleep for "substantial portion of his trial"); *Tippins v. Walker*, 77 F.3d 682, 687 (2d Cir. 1996); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984) ("[W]hen an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary."). There is no evidence in this record to support a finding that Buckman's trial counsel was asleep during a substantial portion of trial, let alone during any portion of trial. Closing one's eyes at times during a trial does not constitute sleeping.

Finally, Buckman contends that her trial counsel failed to object to prejudicial argument made by counsel for the Government and prejudicial testimony elicited from Government witnesses. Specifically, she contends that her trial counsel failed to object to statements made by counsel for the Government—in both her opening and closing—about the "grave wrongs done to the homeowners." (Def.'s Mot. 23.) Defendants were not charged with fraud against the homeowners, but only charged with fraud against the banking institutions that funded the loans. According to Defendant, the homeowners' statements about the losses they suffered as a result of Buckman's misrepresentations were irrelevant, and her counsel should have raised an objection either during opening or closing statements or through a motion *in limine*. Defendant's argument ignores the fact that counsel for co-Defendants raised this very objection with the Court, and the objection was overruled. Moreover, legal counsel's cross-examination of the homeowners—

although aggressive at times—was not prejudicial and did not result in a constructive denial of legal counsel.

An automatic grant of a new trial without a showing of prejudice under *Cronic* requires a complete breakdown of the adversarial process. Buckman has failed to demonstrate that such a breakdown occurred here. Her trial counsel filed pleadings on the docket, made objections, cross-examined Government witnesses, called character witnesses, and made arguments during the course of the trial. His performance was sufficient to challenge the Government's case-in-chief, and subject it to a meaningful adversarial testing. Counsel's methods were not "so egregious that . . . [D]efendant was in effect denied any meaningful assistance at all." *Childress*, 103 F.3d at 1229. They were satisfactory for purposes of *Cronic*.

Buckman has failed to demonstrate that a presumption of prejudice is warranted under *Cronic*. Accordingly, we will evaluate her ineffective assistance of counsel claim under *Strickland*.

### B. Buckman Failed to Prove Prejudice under *Strickland*

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that: (1) his or her attorney's performance was deficient; and (2) the deficient performance prejudiced his or her defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). To establish prejudice, a defendant must show that "counsel's errors were so serious as to deprive [her] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.

Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Under *Strickland*, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcome[ing] the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citation omitted). While a defendant has the right to effective assistance of counsel, courts have explained that the Constitution does not guarantee the right to a perfect trial. *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) ("[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but [] to guarantee each defendant a fair trial, with constitutionally competent counsel."). "Judicial scrutiny of counsel's performance must be highly deferential," as "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689.

Since "failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts will consider whether the defendant can establish prejudice prior to evaluation the minutia of counsel's performance. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

Buckman contends that counsel's deficient performance caused her prejudice. In assessing prejudice, courts must consider the strength of the evidence presented against Defendant during the trial. *Buehl v. Vaughn*, 166 F.3d 163 (3d Cir. 1999); *see also United States v. Calhoun*, 600 F. App'x 842, 844 (3d Cir. 2015). "Without considering the strength of the evidence against the defendant, a court cannot determine whether there was a reasonable probability of a different result." *Calhoun*, 600 F. App'x at 844. As the Supreme Court stated

in *Strickland*, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." 466 U.S. at 696.

Trial in this case lasted nearly four weeks and involved over fifty witnesses and over 300 exhibits. Most of that evidence directly involved Silver Buckman. The evidence of her guilt was overwhelming. For example, two witnesses who worked directly for Buckman testified that she was solely responsible for the mortgage applications. Hampton Young, who was employed by Buckman as a loan adviser, testified that the lease buy-back transaction was "Silver's baby" and that she worked on the "majority of stuff" associated with them, including obtaining the signatures of the "investors," her parents, Vincent and Cynthia Foxworth, and submitting the mortgage applications to the banks. (Oct. 7 Trial Tr. 31-32, ECF No. 233.) Joyce Shead, who also worked for Buckman, testified that nobody other than Buckman was responsible for inputting information into the loan application forms that would be turned over to the financial institutions. (Oct. 9 Trial Tr. 20, ECF No. 235.)

In addition, Agent Reed testified about the numerous loan applications and property transfer documents that were discovered during the course of the investigation, including the myriad of misrepresentations made in those documents. On the loan applications that were sent to the banks, the Foxworths' income was inflated. (Gov't's Ex. 88; Oct. 26 Trial Tr. 89-90.) On one loan application, their gross income was $167,000; however, their income tax return for that year reported only $67,000. (Oct. 26 Trial Tr. 90-93.) The loan applications also misrepresented that the Foxworths were receiving rental income from homes that the Foxworths had purchased in prior lease-buyback arrangements. (Gov't's Ex. 40, 40A, 45, 46.) They were not receiving rental income. Misrepresentations were also made on the HUD-1 forms that were presented at the time of settlement, such as the amount of cash that was to be provided by the buyer and the

13

amount of cash that would go to the seller. (Gov't's Ex. 47, 127.) And the Lending Institutions were not told that these transactions involved a lease-buyback arrangement.

The evidence of Silver Buckman's guilt presented during the trial was significant. Given this evidence, Buckman has not established a "reasonable probability that, but for counsel's" alleged failure to adequately prepare for trial, review discovery, stay awake during trial, raise evidentiary objections, and object to Government's counsel's arguments, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Rollins v. Horn*, 386 F. App'x 267, 270 (3d Cir. 2010) (affirming district court's determination that the defendant did not suffer prejudice in light of the significant evidence of his guilt); *Calhoun*, 600 F. App'x at 844 ("Because the evidence of guilt presented at trial was ample, if not overwhelming, we find [the defendant] was not prejudiced under *Strickland*.").

Buckman has failed to demonstrate that she is entitled to relief under either *Cronic* or *Strickland*.

## IV. CONCLUSION

For these reasons, Defendant's Motion for New Trial Pursuant to Federal Rule of Criminal Procedure 33(b)(2) will be denied.

An appropriate Order follows.

BY THE COURT:

*/s/R. Barclay Surrick*
**U.S. District Judge**