## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

      v.                  :        CRIMINAL NO. 14-540

SILVER BUCKMAN          :
VINCENT FOXWORTH
CYNTHIA FOXWORTH      :

### GOVERNMENT'S THIRD SUPPLEMENTAL SENTENCING MEMORANDUM

The United States of America, by its undersigned attorneys, Louis D. Lappen, Acting United States Attorney for the Eastern District of Pennsylvania, and Anita Eve, Assistant United States Attorney for the district, respectfully submits this Third Supplemental Sentencing Memorandum for the purpose of addressing: (1) the issue of the inclusion of loss suffered by homeowners; (2) the government's updated loss calculation table and supporting documents;[1] and (3) completed surveys obtained by the United States Attorney's Office Victim Witness Assistance Unit (VWAU).

### A. Loss to Lenders, as well as, Homeowners

The government presented a factual summary of the conspiracy and various substantive acts in its Sentencing Memorandum for each of the defendants, Dkt. Nos. 270-272, and, in its Supplemental Sentencing Memorandum, Dkt. No. 273, identified loss calculations for both victim lenders and homeowners.  Attached to this Third Supplemental Sentencing Memorandum, as Exhibit A, is the government's updated loss calculations for both victim lenders and homeowners.

---

[1] The government is awaiting additional information from lenders for the purpose of providing proposed restitution amounts to the Court.

During a conference call held with the Court on September 27, 2017, counsel for defendant Silver Buckman implied that the only loss that should be considered by the Court for sentencing purposes is that suffered by the lenders. This was further illustrated by a chart provided to the Court on behalf of the defendants. However, to suggest that this case is one that is limited only to the loss of the lenders is absurd.

As the government stated in its Supplemental Sentencing Memorandum,

A jury convicted SILVER BUCKMAN, VINCENT FOXWORTH, and CYNTHIA FOXWORTH of conspiracy as charged in Count 1 of the Indictment. Count 1 reads, in part:

> *Defendants knowingly and intentionally conspired and agreed with each other and others to devise a scheme and artifice to defraud <u>homeowners and lenders</u>, including federally insured financial institutions, by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce, certain writings, signs, signals, pictures and sounds, ...in violation of 18 U.S.C., Sections 1343 (wire fraud) and 1344 (bank fraud).*

The Indictment specifically describes the objective of the conspiracy for which SILVER BUCKMAN, VINCENT FOXWORTH, and CYNTHIA FOXWORTH were convicted:

> *The object of the conspiracy and scheme to defraud was to <u>obtain money and property</u> from <u>financially distressed homeowners and lenders</u> by making materially false and fraudulent misrepresentations.*

The Indictment is clear, as was the trial evidence and testimony, that the defendants' conspiracy targeted and victimized lenders, as well as, financially distressed homeowners. Any notion that the defendants' crimes only victimized federally insured lenders is false. The notion that only lenders suffered actual financial losses because of the criminal conspiracy is false. Failure to recognize the losses suffered by the victim homeowners would unreasonably minimize not only the true financial impact of the victims of these crimes, but also the true emotional impact suffered by individuals who lost their homes, equity, or chance at financial security.

2

The indictment detailed all stages of the scheme.  It previewed the evidentiary proof of a scheme that worked by deceiving and defrauding homeowners and lenders and even some straw borrowers, all of whom were collectively left holding the bag for the sums that the defendants extracted from the homeowners' equity and the lenders.  The government's proof at trial did not vary from what was alleged in the indictment charging a scheme to deceive and defraud the homeowners and lenders.

In essence, while the defendants' mortgage fraud scheme involved material misstatements, misrepresentations, and omissions relied on by lenders to fund loans, the mortgage fraud **also** included the targeting of homeowners who had equity in their homes and were facing foreclosure or otherwise needed money to maintain their homes.  The homeowners were duped into participating in a fraudulent lease buy-back program that effectively stripped them of their equity and caused them to suffer other losses as a part of the loans that were obtained from the lenders to fraudulently purchase their properties.  Simply put, the relationship forged by the defendants between the lenders and homeowners was so intertwined that they could not target and victimize one without doing the same to the other.  Therefore, both the lenders and homeowners were victims and the Court should calculate loss based on their combined loss.

To the extent that the defendants' perspectives on loss is such that they do not view the homeowners as victims, the government believes that it is instructive to view how the guidelines define "victim" in an application note to § 2B1.1.  With two notable exceptions, the term "victim" means either: "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the

offense."[2]  Because this case concerns only the first part of this definition, the government herein will not address individuals who may be victims under § 2B1.1 as a result of sustaining bodily injury.

"Person" as used in the definition of victim includes "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies."[3]  For purposes of a victim enhancement, "actual loss," which is also defined in the notes to §2 B1.1, "means the reasonably foreseeable pecuniary harm that resulted from the offense."[4] "Pecuniary harm" is "harm that is monetary or that otherwise is readily measurable in money," and therefore does not include emotional distress, harm to reputation, or other non-economic harm.[5]

In this case, like the lenders, the homeowners' loss of equity should be included in determining the loss amount because their losses were in furtherance of the defendants' jointly undertaken criminal activity.   Furthermore, those acts were reasonably foreseeable to the defendants in connection with that criminal activity.

The government's examination of similar mortgage fraud cases has revealed that other sentencing courts have calculated loss based on the loss to the lender, as well as, to the homeowners where the government has introduced credible evidence of their loss.[6]  In *United States v. Betts-Gaston,* 860 F.3d 525 (7th Cir. 2017), the defendants were convicted for engaging

---

[2] USSG §2B1.1, Application Note 1.

[3] *Id.*

[4] USSG § 2B1.1, Application Note 3(A)(i).

[5] USSG § 2B1.1, Application Note 3(A)(iii).

[6] The government does not suggest that any of the referenced cases are precedential, but they are illustrative for sentencing purposes.

in scheme in which they convinced homeowners facing foreclosure to participate in a program designed to keep them in their homes, have straw buyers obtain mortgages to purchase their homes, and, after the settlements, deed the properties to a trust controlled by the defendants. The district court calculated the loss amount by adding: "(1) the homeowner equity extracted from each sale, and (2) the difference between the loans taken out on each and that home's value, as measured by a later sale or by the Cook County Assessor's Office." *Id.* at 538. The Seventh Circuit affirmed the district court's loss calculation. *Id.* at 539-41. This was the same calculus used by the sentencing court in *United States v. Lewis,* No. 08-0289 (D. Md), and *United States v. DeMarco,* No. 10-790 (E.D. Pa), which also ordered restitution to the homeowners and lenders.

Even if this Court were to accept the defendants' argument that the loss suffered by the homeowners was not directly attributable to the charged offenses, which the government does not suggest that the Court do, their loss would remain a sentencing factor as relevant conduct. As the Court is aware, relevant conduct need not be conduct with which the defendant was charged, nor conduct over which the federal court has jurisdiction. *United States v. Pollard,* 986 F.2d 44 (3d Cir. 1993). Nevertheless, relevant conduct includes "all acts … committed by the defendant … that occurred during commission of the offense of conviction" and "all harm that results from [such] acts." U.S.S.G. § 1B1.3(a). Relevant conduct also includes "all acts … that were part of the same course of conduct or common scheme or plan as the offense of conviction. *Id.* at §§ 1B1.3(a)(2) and 3D1.2(d). It may include "[c]onduct that is not formally charged or is not an element of the offense of conviction." U.S.S.G. § 1B1.3 cmt. background; *see also, United States v. Tidwell,* 521 F.3d 236, 250 n.9 (3d Cir. 2008).

In this case, the loss attributable to the homeowners is valid because the defendants'

5

conduct during the charged offenses was certainly criminal and was part of the same on-going scheme as the offense conduct.   *See* § 1B1.3(a)(2).

### B.  Updated Loss Calculations

The government presented its initial loss calculations for each victim, *to include lenders and homeowners,* in the Supplemental Sentencing Memorandum, filed September 26, 2017 (Dkt. No. 273-1).  In that filing, the government calculated that the total "Actual (Net) <u>Lender</u> Loss" was $2,084,865.90, that the "Actual (Net) <u>Homeowner</u> Loss" was $948,549.24, and that the "Actual (Net) <u>Total</u> Loss" (i.e. the combined actual losses sustained by both lenders and homeowners) was $3,033,415.14.

With this Third Supplement Sentencing Memorandum, the government proposes revisions to the initial loss numbers identified in Dkt. No. 273-1.  The loss numbers are being revised to reflect: (1) the most recent and/or accurate property disposition information used to calculate credits towards lender losses; (2) to properly characterize money and property recovered by the homeowners from subsequent civil litigation as reductions in restitution owed rather than reductions of loss amounts; and (3) to reflect minor changes to previous calculations. Upon consideration of these proposed revisions, which are described more fully below, the "Total Loss" (i.e. the combined losses sustained by both lenders and homeowners) identified in Exhibit A of the government's Third Supplemental Sentencing Memorandum is $3,416,724.82.

### *Revisions to Lender Loss Numbers Related to Updated Property Disposition Information*

The original lender loss numbers calculated by the government, which were identified in the Supplemental Sentencing Memorandum, relied upon a majority of the sales data or fair market value estimates identified in the Presentence Investigation Report ("PSR"), which was

updated as of June 29, 2016. However, there were five instances when the government disagreed with the valuations proposed in the PSR. The transactions with which the government disagreed with the PSR valuations involved Brock, Harper, Emanuel, Gibbs and Pace.

Since the filing of the Supplemental Sentencing Memorandum, the government has obtained more accurate and/or recent sales data or fair market value estimates for three additional transactions: Wilson; Pryce; and Carty. Specifically, the government found that the Wilson property was sold in foreclosure in May 2011 for $74,900 (not in November 2012 for $149,000, as accepted by Defendants), that the Pryce property was sold in foreclosure in August 2015 for $15,000 (rather than the FMV estimate of $96,082 accepted by the Defendants), and that the Carty property was estimated by the lender to be worth $243,900 when it agreed to a loan modification in August 2010 (rather than a FMV estimate of $92,310 accepted by the Defendants). In the Wilson and Pryce transactions, the revisions effectively increase the loss amounts attributable to the defendants. In the Carty transaction, the revision effectively reduces the loss amount attributable to the Defendants.

The revised lender loss numbers identified in Exhibit A of this Third Supplemental Sentencing Memorandum incorporate and include this most recent and/or accurate sales data for Wilson, Pryce and Carty transactions. The Exhibit attached hereto now specifically identifies all instances when the government disagrees with valuations contained in the PSR, which were all accepted by the Defendants. Likewise, the government has included copies of documents and records that support its all of its valuations and sales data.

*Revisions to Homeowner Loss Numbers to Remove Credit for Civil Recoveries*

The loss numbers contained in Exhibit A of the government's Supplemental Sentencing Memorandum included as credits towards homeowner loss money and property recovered by homeowners as a result of civil litigation.   Homeowners identified by the government to have had civil recoveries included victim homeowners Wilson, Brock, and Harper.   In this Third Supplemental Sentencing Memorandum, the government proposes to now include those recovered amounts as loss attributable to the Defendants for the purpose of calculating their sentence guideline ranges.

Contrary to a suggestion made by counsel for defendant Silver Buckman, the United States Sentencing Guidelines, Section 2B1.1, Application Note 3(A), "loss is the greater of actual loss or intended loss."   As the party with the burden of proof, the government has the ability to choose the greater of the two loss figures.   Upon consideration of the fact that the civil recoveries occurred as the result of civil litigation initiated *after the fraud was detected,* the government believes that recovered amounts should only be deducted from restitution owed by the Defendants, not the loss amounts to be considered during sentencing.   To reduce loss by the amounts of those civil recoveries would significantly minimize losses suffered by Wilson, Brock, and Harper.   In the cases of Brock and Harper, deductions of civil recoveries would effectively mean that the Defendants were responsible for no losses to these individual homeowners.   As such, the homeowner loss numbers identified in Exhibit A of the Third Supplemental Sentencing Memorandum have been revised to remove as credit toward homeowner loss civil recoveries initiated after the fraud was discovered.   Those amounts will instead reduce restitution.

*Minor Corrections to Previous Calculations*

8

Since the filing of the government's Supplemental Sentencing Memorandum, the government has made several minor adjustments to homeowner and lender losses in addition to the revisions already discussed.   These adjustments are immaterial in that they do not substantially alter loss numbers and are merely being submitted to reflect the most accurate and current information.   The specific minor revisions are identified as follows: (1) homeowner loss to John and Theresa Livia was reduced by $2,695.23 to reflect cash to seller on the HUD-1 and to correct an estimated realtor expense calculation error; (2) homeowner loss to Lisa Gould was increased by $5,834.76 to reflect monthly payments made by Gould to Fresh Start in the year following the closing; (3) lender loss for the Maldonado transaction was reduced by $143 to reflect additional principal payments to lender; (4) lender loss for the Emanuel transaction was reduced by $511.60 to reflect additional principal payments to lender; and (5) lender loss for the Gibbs transaction was increased by $2,018.48 to reflect fewer principal payments and amortization recalculation.

The government has presented attachments to the chart in Exhibit A as indicative of the manner in which the government calculated each victims' losses.   It contains all revised lender and homeowner loss numbers described above.   Exhibit A consists of an updated summary chart as well as individual charts for each transaction that demonstrate and explain each loss calculation for the lenders and homeowners.   The government has also provided copies of the documents and records that support its calculations, sales data, and fair market valuations.   At a meeting held with defense counsel on October 4, 2017, the government supplied each defense

9

counsel with updated digital copies of its trial exhibits, loss calculations, and documents that support the government's calculations, as well as, the sales data and fair market valuations.[7]

### C.  Victim Witness Surveys

Following the defendants' conviction, the United States Attorney's Office Victim Witness Assistance Unit (VWAU) forwarded surveys to the victims of the defendants' fraud scheme.  Exhibits B through K constitute the responses received by the VWAU.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


 /s/ ANITA EVE
Anita Eve
Assistant United States Attorney

---

[7]  The contents of the disc supplied to defense counsel have not been included as an Exhibit to this Memorandum.   The government will supply the Court with a copy of the disc upon request.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Second Supplemental Sentencing Memorandum and Exhibits have been filed electronically on the Electronic Case Filing system and is available for viewing and downloading from the ECF system, and was served by electronic mail upon:

Dana Bazelon, Esquire
*Counsel for Silver Buckman*

Christopher Furlong, Esquire
*Counsel for Vincent Foxworth*

Martin I. Isenberg, Esquire
*Counsel for Cynthia Foxworth*

 /s/ Anita Eve
ANITA EVE
Assistant United States Attorney

Dated: October 20, 2017