IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 14-540-01 |
| SILVER BUCKMAN | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                 **JULY 22, 2020**

Silver Buckman seeks a compassionate release from her 42-month prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 401, 403). She argues that her medical conditions (gingivitis and periodontitis), her age (41 years old), and her inability to maintain social distancing where she is incarcerated, pose a serious risk of illness or death in light of the current global pandemic of COVID-19, a disease caused by the highly contagious respiratory virus SARS-CoV-2. Buckman also argues that her continued custody constitutes cruel and unusual punishment under the Eighth Amendment. For the reasons that follow, Buckman's Motion will be denied.

**I.      BACKGROUND**

On October 29, 2015, a jury found Buckman guilty of conspiracy to commit bank fraud and wire fraud, six substantive counts of bank fraud, and five substantive counts of wire fraud. The overwhelming evidence centered on Buckman's orchestration of a scheme to defraud homeowners and lending institutions in lease-buyback transactions, pursuant to which she obtained $3,787,600 in mortgages from federally insured and non-federally insured financial institutions.

Buckman's crimes carried a maximum penalty of 30 years' imprisonment. She faced a sentencing guideline range of 87 to 108 months. (Presentence Investigation Report ("PSR") 36 (on file with Court).); *see also United States v. Buckman*, No. 14-540, 2019 WL 142385, at *9 (E.D. Pa. Jan. 8, 2019), *aff'd*, No. 19-1128, 2020 WL 1934026 (3d Cir. Apr. 22, 2020). On January 9, 2019, Buckman was sentenced to a term of 42 months' imprisonment and five years supervised release. (ECF No. 331.) Her sentence was significantly below her guideline range.

Buckman is 41 years old. She has served approximately 15 months (or 34%) of her 42-month sentence. She is currently housed at the Alderson Federal Prison Camp ("Alderson FPC") in Alderson, West Virginia. Buckman requests that her sentence be reduced to time served. In the alternative, she requests that the Court modify her term of supervised release to include home confinement for the duration of time remaining on her original term of her imprisonment. She argues that extraordinary and compelling reasons justify her release because her medical conditions and her age place her at a high risk of serious illness or death if she were to contract COVID-19, and because of the conditions at Alderson FPC, where social distancing is impossible and personal protective equipment ("PPE") is scarce. Buckman also contends that she is not a danger to the community because she has no criminal history, her crime was not violent, and she has proven to be a model inmate who has completed numerous rehabilitation and educational programs. Finally, Buckman argues that considering the conditions at Alderson FPC, her continued incarceration there constitutes cruel and unusual punishment under the Eighth Amendment. The Government opposes the Motion. (ECF No. 406.)

**II.    DISCUSSION**

Since early this year, the World has faced a public health crisis resulting from the global pandemic caused by COVID-19. Nearly 15 million people have been infected worldwide, with

cases in the United States approaching 4 million.  There have been over 142,000 deaths caused by the disease in the United States.[1]  Individuals over the age of 60 and those with certain underlying medical conditions are at an increased risk of developing serious complications if exposed to the virus.  Because of the contagious nature of the virus, federal, state, and local governments have taken precautionary measures to control its spread, such as closing schools and non-essential businesses, recommending social distancing, requiring that masks be worn in public, and urging people to stay at home.  COVID-19 presents a challenge to our prison systems where precautionary measures are difficult to implement.  As a result, federal courts have received many requests for compassionate release from federal inmates under the First Step Act.

### A.     Request for Compassionate Release

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted the administrative remedies.[2]  In relevant part, § 3582(c)(1) provides that a court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

[1] *See* COVID-19 Dashboard by the Center for Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU), Johns Hopkins University of Medicine Coronavirus Resource Center (accessed July 22, 2020), https://coronavirus.jhu.edu/map.html.

[2] To exhaust administrative requirements, the statute requires that a defendant first "request" that the U.S. Bureau of Prisons ("BOP") file a motion with the court for compassionate release on her behalf.  Only after the defendant has exhausted the administrative rights to appeal the BOP's denial of that request, or after 30 days have passed, whichever is earlier, may the defendant then file her motion with the court. 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (stating that remand of request for compassionate release to district court for substantive review in light of COVID-19 pandemic would be "futile" because the defendant had not complied with the exhaustion requirements under Section 3582). Buckman has complied with the exhaustion requirements of § 3582(c)(1)(A).  On May 1, 2020, Buckman filed a formal request to the Warden at Alderson FPC for compassionate release due to the COVID-19 pandemic. On May 5, 2020, this request was denied.

>(i) extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

The phrase "extraordinary and compelling reasons" is not defined by the statute, but instead incorporates the commentary to the policy statement contained in § 1B1.13 of the United States Sentencing Guidelines. *See United States v. Handerhan*, 789 F. App'x 924, 925 (3d Cir. 2019) (citing *United States v. Barberena*, 694 F.3d 514, 521 n.10 (3d Cir. 2012). Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

>[A]fter considering the factors set forth in 18 U.S.C. § 3553(a), that—
>
>(1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides four categories of reasons that qualify as extraordinary and compelling: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; or (4) "other reasons" to be determined by the Director of the BOP.[3] As a result of amendments to § 3582(c)(1)(A) by the First Step Act, courts now

---

[3] As to the first category—defendant's medical condition—the Policy Statement provides that the defendant must suffer from a "terminal illness" or that the medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). As to the second category—the defendant's age—"[t]he defendant (i) is at least [sixty-five] years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least [ten] years or [seventy-five] percent of his or her term of imprisonment, whichever is less." *Id.* § 1B1.13 cmt. n.1(B). As to

conclude that the catch-all category of "other reasons" applies not only to the BOP Director, but also to courts. *See United States v. Towel*, No. 17-519-6, 2020 WL 2992528, at *3 (E.D. Pa. June 4, 2020); *United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that the Sentencing Commission's "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)").

A legal standard for reviewing compassionate release requests in the context of the COVID-19 pandemic may be distilled from a synthesis of the statute, the Sentencing Guidelines, and recent court decisions. Courts faced with motions for compassionate release in light of COVID-19 consider: (1) whether "extraordinary and compelling" reasons exist to reduce the defendant's sentence; (2) whether the defendant is a danger to the community under § 3142(g); and (3) whether the § 3553(a) sentencing factors support a sentence reduction. *See United States v. Pabon*, -- F. Supp. 3d --, No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020); *United States v. Mathe*, No. 14-528, 2020 WL 3542177, at *3 (E.D. Pa. June 30, 2020); *United States v. Hannigan*, No. 19-373, 2020 WL 4015238, at *3 (E.D. Pa. July 16, 2020).[4] To show

---

the third category—the defendant's family circumstances—the Policy Statement provides that the defendant's family circumstances must include either "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id*. § 1B1.13 cmt. n.1(C). As to the fourth category—termed the "catch-all provision"—the Policy statement permits the BOP Director to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. § 1B1.13 cmt. n.1(D).

[4] The sentencing factors that courts consider when imposing a sentence under § 3553(a) include:
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--

"extraordinary and compelling reasons," courts have generally required defendants to show two things: (1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed. *United States v. Somerville*, -- F. Supp. 3d --, No. 12-225, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020) (citing cases).

Buckman has not demonstrated extraordinary and compelling reasons to justify a reduction in her sentence. Most significantly, Buckman does not suffer from a serious medical condition that places her at a high risk of serious complications if she were to contract COVID-19. Prior to her sentencing, Buckman reported that she did not have any serious medical problems or receive treatment for any significant health difficulties. (PSR 30.) Nevertheless, she now states that she suffers from chronic gum inflammation and chronic pain as a result of gingivitis and periodontitis. These are not medical conditions that place her at an increased risk

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
. . .
(5) any pertinent policy statement--
. . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

of serious illness or death if she were to contract COVID-19.[5] She also claims that her gum inflammation, cysts in her breasts, and her smoking habit, make her immunocompromised and therefore at a greater risk. While it is true that immunocompromised individuals are at an increased risk of serious complications from COVID-19, the Court is unaware of any medical evidence—and Buckman has provided none—supporting her allegation that smoking, gingivitis or cystic breasts contribute to a compromised immune system.

Nor does Buckman's 41-year old age, standing alone, increase her risk of serious illness from COVID-19. Buckman refers to a statement made by the World Health Organization ("WHO") that "risk of severe disease gradually increases with age starting from around 40 years." In that same report, however, the WHO also states that although "COVID-19 infects people of all ages . . . people . . . *at a higher risk* of getting severe COVID-19 disease . . . [include] older people (that is people over 60 years old); and those with underlying medical conditions (such as cardiovascular disease, diabetes, chronic respiratory disease, and cancer)."[6] Although Buckman may be more vulnerable than individuals in their 20s and 30s, her age alone,

---

[5] *See People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention (accessed July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC recognizes that the following underlying medical conditions place individuals at a greater risk of severe illness from COVID-19: chronic kidney disease; chronic lung disease; an immunosuppressed state as a result of an organ transplant; obesity; serious heart conditions; sickle cell disease; and type II diabetes. *Id*. The CDC has also states that, based on limited available data, individuals with "the following conditions might be at an increased risk for severe illness from COVID-19": asthma; cerebrovascular disease, cystic fibrosis, hypertension, an immunocompromised state from blood or bone marrow transplant; immune deficiencies; HIV; use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis; smoking; thalassemia; and type 1 diabetes. *Id.*

[6] *See Coronavirus disease 2019 (COVID-19) Situation Report – 51* (March 11, 2020), World Health Organization (accessed July 22, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57_10

without any underlying medical condition making her more likely to experience serious complications from the disease, does not support a finding that extraordinary and compelling reasons require a reduction in her sentence. *See United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (observing that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner"); *United States v. Maldonado*, -- F. Supp. 3d. --, No. 20-28, 2020 WL 1865746, at *5 (M.D. Pa. Apr. 14, 2020) ("[A]t a minimum courts have typically required proof of a defendant's particular vulnerability to the disease in order to constitute a compelling reason for release." (citation and internal quotation marks omitted)).

Buckman has also failed to demonstrate a more than mere speculative risk of exposure to COVID-19 at Alderson FPC. As of the date of this Memorandum, Alderson FPC has no confirmed cases of COVID-19 among the inmate population or staff. *See* https://www.bop.gov/coronavirus/ (accessed July 21, 2020). Moreover, the BOP has instituted strict protocols at its prisons, including at Alderson FPC, to prevent the spread of COVID-19. Such measures include quarantining new inmates, suspending legal and social visitation, limiting inmate movement, and screening individuals who enter the prison.[7] Buckman argues that the conditions at Alderson FPC make social distancing impossible and place her at risk of exposure. However, "generalized COVID-19 fears and speculation" are insufficient to warrant release. *United States v. Upshur*, No. 18-124-2, 2020 WL 3128026, at *2 (E.D. Pa. June 12, 2020). Indeed, the Third Circuit has cautioned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify

---

[7] *See BOP Implementing Modified Operations*, Bureau of Prisons (accessed July 22, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp

compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

When prisons can keep the number of positive COVID-19 cases low or even at zero, which is the case at Alderson FPC, the risk of exposure is too speculative to render the circumstances extraordinary and compelling. *See*, *e.g.*, *United States v. Gold*, No. 15-330, 2020 WL 2197839, at *2 (N.D. Ill. May 6, 2020) (explaining that courts routinely deny "motions brought by inmates housed in facilities with no evidence of widespread transmission") (citations omitted); *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying request for compassionate release because, *inter alia*, "there are no reported cases of COVID-19 at Defendant's facility"); *United States v. Shabudin*, -- F. Supp. 3d. --, No. 11-664, 2020 WL 2464751, at *2 (N.D. Cal. May 12, 2020) (finding no showing of extraordinary and compelling circumstances warranting release and noting that there are no reported cases of COVID-19 at the facility where defendant is housed); *United States v. Shulick*, No. 16-428, 2020 WL 3250584, at *4 (E.D. Pa. June 16, 2020) (denying request for compassionate release because, *inter alia*, the only case of COVID-19 reported at the prison was a staff member).[8]

---

[8] Buckman has also raised concerns that Alderson FPC is located in a rural town and recent data shows that COVID-19 has hit rural communities particularly hard. She also states that the local hospitals in rural towns are not equipped to handle an outbreak of COVID-19. Alderson is located in Greenbrier County, West Virginia. In Greenbrier County, there have been 80 confirmed cases of COVID-19 and 3 deaths resulting from the disease. In contrast, in Camden County, New Jersey—where Buckman has requested she be released to—there have been 7,867 reported cases of COVID-19 and 560 deaths resulting from the disease. These numbers do not support her argument that she is at a greater risk in Greenbrier County than if she were released to her home state. *See* COVID-19 Dashboard by the Center for Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU), Johns Hopkins University of Medicine Coronavirus Resource Center (accessed July 22, 2020), https://coronavirus.jhu.edu/map.html.

Because Buckman has failed to show extraordinary and compelling reasons justifying her release, we need not address the other two prongs of the analysis: whether she is a danger to the community; and whether the § 3553(a) sentencing factors support a sentence reduction. We note however that although Buckman is not a danger to the community, the sentencing factors set forth in § 3553(a) would not help Buckman's case. While her crimes were not violent, they were very serious and involved many victims. In addition to defrauding banks out of more than $3.7 million, Buckman also defrauded at least 18 vulnerable homeowners who faced financial difficulties and ultimately lost their homes as a result of her fraudulent lease-buyback scheme. *See* 18 U.S.C. §§ 3553(a)(1) and (2) (listing factors for the nature and circumstances of the offense and need for the sentence imposed to reflect the seriousness of offense). Moreover, although Buckman faced a guideline range of 87-108 months' imprisonment, she was sentenced to a term of imprisonment of only 42 months. Granting her a release now when she has only served about one-third of her term of imprisonment would undermine the need for the sentence to reflect the "seriousness of the offense," "respect of the law," and "adequate deterrence." *See* 18 U.S.C. §§ 3553(a)(2)(A) and (B); *see also United States v. Bogdanoff*, -- F. Supp. 3d. --. No. 12-0190-1, 2020 WL 2307315, at *5 (E.D. Pa. May 8, 2020) ("Reducing a sentence by almost two-thirds could also have an impact on the public's respect for the law and deterrence."). Accordingly, Buckman is not entitled to a compassionate release under 18 U.S.C. § 3582(c)(1)(A).

**B.     Cruel and Unusual Punishment under the Eighth Amendment**

Finally, Buckman contends that her continued incarceration at Alderson FPC constitutes cruel and unusual punishment because the conditions at Alderson make it impossible to avoid risk of exposure to COVID-19. She alleges that: all inmates share a common space and cannot

maintain social distancing; inmates are not provided hand sanitizer; there is inadequate medical staff and supplies to handle an outbreak of the virus; testing of COVID-19 does not occur at the prison, despite some inmates showing symptoms; the dormitory-style housing at Alderson FPC promotes exposure to the virus; the prison has started to allow new inmates to self-surrender, also adding to increased exposure; temperature checks are infrequent; and third parties entering facilities do not adhere to the guidelines of wearing PPE and keeping six-feet away from others. She further contends that prison officials at Alderson FPC and the entire BOP have mishandled controlling COVID-19 in federal prisons.

Buckman's claims relate to the manner and conditions of her confinement at Alderson FPC. Claims like these that challenge the execution of sentences are not appropriate in motions for compassionate release. *United States v. Rodriguez-Collazo*, No. 14-378, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020) (construing defendant's claims that the conditions at Elton FCI violated his Fifth and Eighth Amendment rights as claims challenging the execution of his sentence and dismissing claims); *see also United States v. Butler*, No. 16-54, 2020 WL 3207591, at *3 (D. Del. June 15, 2020) (stating that defendant's contention that BOP officials have mishandled the COVID-19 crisis and are violating the inmates' Eighth Amendment rights does not provide a basis for compassionate release). Claims such as these are more properly brought as claims for habeas corpus relief under 28 U.S.C. § 2241, which must be brought in the district where the prisoner is confined. *See Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012) (stating that "§ 2241 confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence"); *United States v. Sheppard*, 742 F. App'x 599, 601 (3d Cir. 2018) (stating that § 2241 motions "must be bought in the district

11

where the prisoner is confined and the prisoner must name the custodian at the facility where he is being held as the respondent" (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)).

As a result, we lack jurisdiction over Buckman's Eighth Amendment claims.

### III. CONCLUSION

For the foregoing reasons, Buckman's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will be denied. An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**